EWART MANUF'G CO. *v.* MOLINE MALLEABLE IRON CO. and others.

(*Circuit Court, N. D. Illinois.* March 21, 1887.)

1. PATENTS FOR INVENTIONS — NEW DEVICE — IMPROVEMENTS IN CHAIN-LINKS.

Letters patent were granted to one Sylvanus Locke, February 23, 1875, for an improvement in chain-links and chains, being a method of constructing a chain with links detachable from the adjoining links, and so arranged that the links, when turned into working position, could not become disengaged The device effected an articulation of the links by thrusting an end-bar with a forward movement into the jaws of a hook, when the links, being turned backward, became safely united for working purposes. The proof showed that a patent was previously granted to one Ewart for a similar device, but the articulation was accomplished by a sidewise movement. *Held,* on a bill filed to restrain infringement, that the device described in the Locke patent was new in art, and said patent was not defeated by the prior Ewart patent, although its scope was limited by the prior state of the art as shown by said Ewart.

2. SAME—IMPROVEMENT IN CHAIN-LINKS—INFRINGEMENT.

The manufacture of links with the use of an end-bar arranged to enter the throat of a hook by a forward movement, the links being slightly fastened together by bending down the point of the hook so as to narrow the throat of the same, the links admitting a severance by a small amount of force, is to all intents such a use of the characteristics of the said Locke patent as will be deemed an infringement of the same.

*In Equity.*

*Offield, Towle & Phelps, (B. F. Thurston, of counsel,)* for complainants.
*West & Bond,* for defendants.

BLODGETT, J. This is a bill in equity for an injunction and accounting, by reason of the alleged infringement of a patent granted February 23, 1875, to Sylvanus Locke for "an improvement in chain-links and chains;" the special utility of the link consisting in its adaptation to the formation of what are known as sprocket or drive chains. The patentee states the object and scope of the device in his specifications as follows:

"This invention relates to a method of constructing a chain with links, each individually detachable from its adjoining links when brought to a certain relative position thereto. The object of this improvement is to construct a chain with links detachable at any point, so that when desired the chain can be divided at any part of its length. This is particularly useful for endless chains employed for transmitting motion, as the reel-chains of harvesters, etc."

The distinguishing feature of this patent is an open hook on a link which permits the end-bar of another link to enter the throat of the hook when the links are placed face to face, and with such arrangement of parts that when the links are turned into their working position, the end-bar embraced in the hook cannot back out from its engagement with the hook; thus, by connecting together a series of these links, making a drive-chain or sprocket-chain, each link of which is removable either for the purpose of shortening the chain, or taking out a worn or defective link, or for adding links so as to increase the length of the chain when necessary. It also allows the manufactured links to be assembled or put together by the purchaser or user, without the aid of skilled workmen. Infringement is charged only as to the first claim, which is as follows: "(1) A chain-link, having its end-bars eccentric to the side-bars reversely to each other, one of said end-bars being provided with a hook, substantially as and for the purpose specified." The defenses interposed are: (1) That the patent is void for want of novelty in the device. (2) Non-infringement.

The proof shows that Locke was not the first to make a removable link for a drive-chain. On September 1, 1874, a patent was issued to W. D. Ewart for a removable link in this class of chains, but he effected the articulation of his links by a side movement by which an end-bar was caused to enter the throat of the hook when the links were placed in a certain relation to each other. After the articulation had been effected, that is, after the end-bar had been placed within the grasp of the hook, the link was turned back into a working position, and the links thus joined could not be separated while in a working position, or without turning them back into the position in which they were united. Locke's device permits the end-bar of the link to enter the hook by an endwise movement of the link when the links are brought nearly face to face; and when the links are turned into a working position, the ends of the side-bars of the two links thus united abut against each other so

as to prevent the end-bar from backing out or disconnecting itself from the grasp of the hook. Both the Ewart patent of 1874, and the Locke patent now under consideration, show removable links, but the Ewart link was articulated with the hook by a sidewise movement, while the Locke device effected the articulation by thrusting the end-bar by a forward movement into the jaws of the hook, when the link being turned backward became at once safely united for all working purposes. Ewart's being the only device for a removable link shown by the proof to have preceded the Locke patent, I am of opinion that the mode of articulating the link shown by Locke was new in the art, although Ewart had shown a mode of making a removable link by which a safe articulation was obtained by a different arrangement of parts. I am, therefore, of opinion that the Ewart patent does not anticipate or defeat the Locke patent, and therefore that the Locke patent is not void for want of novelty, although its scope is limited by the prior state of the art as shown by Ewart.

As to the question of infringement, the proof shows that the defendants manufacture and sell a sprocket or drive chain, constructed of separate links articulated together by means of hooks and end-bars, the end-bar being so arranged that it enters the throat of the hook by a forward movement or motion, and with such an arrangement of parts that when the links so united are turned into a working position the side-bars of the two links abut or strike against each other in such manner as to prevent the links from backing out of the hook. The throat on defendant's hook is also slightly closed, evidently by a blow or pressure after the articulation is accomplished, so that the links will not separate in any ordinary position in which the chains or links may be thrown in relation to each other. Notwithstanding this partial closing of the throat of the hook to prevent the link from dropping out of the connection, it is still evident that all the essential principles of a removable link are embodied in the defendant's link. A small amount of force will evidently drive the end-bar out of the throat of defendant's hook whenever it is desirable to do so for the purpose of inserting a new link, or otherwise separating the links. Indeed, the proof shows that the defendant instructs the purchasers of its links how to uncouple them after they have been once brought together, and the hook closed for working purposes, and shows that only a comparatively slight amount of force is necessary, when the links are in a proper position, to separate the link from the hook.

The defendant insists that Locke is confined by his specifications and claims to a link so constructed that the end-bars shall be in planes eccentric to the side-bars, and claims that in defendant's links this feature is not shown. As already stated, the feature of the Locke patent is such an arrangement of parts that when the links are joined and turned into working position, the side-bars of the two links will be in the same plane, and their ends abut against each other so as to effectually prevent the end-bar from escaping from the grip of the hook. Defendant's side-bars and end-bars are not thrown out of their respective planes to the same extent or degree as is shown in Locke's patent, but the same effect is

produced by a bulge or cam upon the end of defendant's side-bars which abut against the end-bars of the link with which it is articulated by the hook, so as to produce precisely the same result which is shown by the abutting side-bars of the Locke patent. This bulge, or cam, upon the defendant's side and end bars performs the same function, and produces the same result, as that produced by the Locke side-bars, and no other; that is, it keeps the end-bar from backing out, or being released from the hook, and holds the link in place when in working position, and at the same time allows the links to be separated by turning them face to face. The only difference, then, between the defendant's link and that of Locke is that the defendant, after connecting his links together, slightly fastens them by bending the point of the hook down so as to narrow the throat or opening of the hook. It is still to all intents and purposes a removable link, and embodies all the characteristics and apparently useful features of the links shown in the Locke patent.

A decree may be entered finding that the defendant infringes, and referring the matter to a master to inquire as to damages.